FILED

2014 May-30  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| WALK, INC . and | ) | |
| KENNETH W. BRAMLETT, M.D., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:13-cv-01743-JEO |
| | ) | |
| ZIMMER, INC., | ) | |
| ZIMMER HOLDINGS, INC., and | ) | |
| ACCELERO HEALTH PARTNERS, LLC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the court is the defendants' motion to dismiss.  (Doc. 12).  The motion has been

fully briefed.  Upon due consideration, the court finds that the motion is due to be granted in part

and denied in part.

## BACKGROUND

Plaintiffs Walk, Inc. ("Walk") and Kenneth W. Bramlett, M.D. ("Bramlett") entered into

a Purchase Agreement with Musculoskeletal Management Systems, LLC, doing business as The

Human Motion Institute ("HMI") concerning the sale of certain medical practice management

technology developed by Bramlett.  Plaintiffs have sued HMI's successor in interest, Accelero

Health Partners, LLC ("Accelero") and its parent companies, Zimmer, Inc. ("Zimmer") and

Zimmer Holdings, Inc. ("Zimmer Holdings") (collectively "the Zimmer defendants") for breach

of contract (Count One), fraudulent suppression (Count Two), promissory estoppel (Count

Three), and intentional interference with contractual relations (Count Four).  The defendants

assert that all the claims fail as a matter of law for various reasons.  (Doc. 13 at 1).  Each

contention will be addressed below.

## STANDARD OF REVIEW

A complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Defendants have filed their motion to dismiss arguing that Plaintiffs' allegations fail to state a claim upon which relief can be granted. Such a motion tests only the sufficiency of the claim set out in the pleadings. *Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). Thus, the " 'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). When ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010). However, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). To survive such a motion, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Speaker*, 623 F.3d at 1380 (quoting *Ashcroft v Iqbal*, 556 U.S. 662, 677 (2009)).

## FACTUAL ALLEGATIONS

Bramlett is an orthopedic surgeon. (Complaint[1] at ¶ 2). Walk is an Alabama corporation

---

[1]The complaint is located at document one.

where Bramlett is the medical director and sole shareholder.  (*Id*.)  In approximately 1990, Bramlett developed an "orthopaedic practice management technology" centered on practice management and improving clinical efficiencies.  (*Id*. at ¶ 11).  Because Bramlett developed this technology in the scope of his employment with Walk, it became the owner.  (Doc. 1-1). Plaintiffs filed for and received trademarks for much of the technology.[2]  (Complaint at ¶ 12).

Pursuant to a Purchase Agreement ("the Agreement"), Walk and Bramlett agreed to "absolutely and irrevocably transfer, sell and assign to HMI[3] all their right, title and interest" in various medical practice management concepts referred to as "the Technology" and described in an exhibit to the Agreement.  HMI agreed to pay Walk a "Transfer Fee," an "Earn Out," and attorneys' fees, up to $500,000.00.  (Purchase Agreement ("P.A.")[4] at Article IV).  The Transfer Fee is comprised of two parts: (1) an initial payment at closing of $1,500,000.00 and (2) additional payments of $150,000.00 for the first commercial sales of a product or service for use in connection with each of four additional Medical Specialities,[5] other than orthopaedics.  (*Id*.)

The "Earn Out" payments comprise three groupings: (1) seven percent of all product sales for the period from the first commercial sale of an orthopedics products until the last day of the fifth calendar year following that first sale; (2) five per cent of all sales for the remainder of the

---

[2]The U.S. Patent Office has a file date of Nov. 7, 1994 for "ORTHOP.A.C.E." with a registration date of Dec. 12, 1995 to registrant Walk, Inc. The current owner is listed as Accelero Health Partners, LLC.  *Available at* U.S. Patents & Trademark Office, http://tess2.uspto.gov/bin/gate.exe?f=searchss&state=4803:z67vk1.1.1 (query "ORTHOPACE").

[3]As the successor-in-interest to HMI, Accelero Health Partners is substituted in the Agreement for HMI.

[4]The Agreement is located at document 1-1 and it includes two exhibits (A & B).  It will be cited herein as "P.A. at ____."

[5]The Agreement defines "Medical Specialities" to mean "orthopaedics, cardiovascular medicine and surgery, neurology, neurosurgery and primary care."  (P.A. at Article I., ¶ J).

Earn Out Term, which ends on the last day of the fifteenth calender year following the first

commercial sale; and (3) fifty percent of all license fees HMI received during the Earn Out Term.

(*Id*. at Article I, ¶ F & Article IV, ¶ B).  The Agreement also includes an "Earn Out Goal" of

$500,000 for the five-year period beginning with the first commercial sale.  (*Id*., Article IV, ¶ B

& Article V, ¶ B; Exhibit B to P.A. (doc. 1-1 at 20 of 20)).  The Agreement requires HMI to

provide quarterly sales reports to Walk during the Earn Out Term.  (*Id*. at Article V(C)).  Should

Walk not receive the specified "Earn Out Goal," HMI has the right to pay Walk the deficiency.

(*Id*. at Article VIII).  If that amount is not paid, Walk has a "Claw Back Right" concerning "all or

part of the Technology."  (*Id*.)

The Agreement requires Bramlett to provide consulting services upon reasonable request

by HMI.  (*Id*. at Article XI).  These services are available until the earlier of: (i) two years

following the effective date of the agreement or (ii) the date of First Commercial Sale  of the

Technology.  (*Id*.)  Bramlett's compensation for his services is set at $500.00 per hour, plus

expenses, and HMI is limited to requesting no more than two site visits in a one month period.

(*Id*.)

The Agreement also gives Walk "the right to have an independent third party accounting

firm reasonably acceptable to HMI audit, for a period not to exceed five (5) days and at Walk's

expense, HMI's compliance with Articles IV [Payments] and V [Terms of Payments]."  (*Id*.,

Article X).

The Agreement also provides, "This Agreement contains the entire understanding of the

parties with respect to the matters contained herein...."  (*Id*., Article XIX).  It is signed by

Elizabeth Berringer, as President of HMI, and Bramlett on behalf of himself and as President of

4

Walk.  (*Id*. at 14).

Plaintiffs allege that, to date, they have yet to receive any further compensation beyond the initial $1,500,000.00 payment. (Doc. 1 at 19-20).  Furthermore, they allege that Defendants have not used Bramlett's consulting services, nor have any required quarterly sales reports been offered to Plaintiffs.  (*Id*. at  21, 24).  Additionally, Plaintiffs allege that Defendants are marketing and selling technology similar to Plaintiffs' through Accelero under different brand names.[6]  (*Id*. at  25-26).

The complaint contains four separate counts.  First, Plaintiffs allege that Defendants breached the Agreement by failing make proper payments, failing to provide required quarterly sales reports, and failing to use Bramlett's consulting services.  (*Id*. at  28-30).  Second, Plaintiffs allege Defendants fraudulently suppressed material facts before and after they entered into the Agreement.  (*Id*. at 31-36).  Alternatively, Plaintiffs claim that prior to entering into the Agreement, Defendants knew they were not going to market and sell the Technology, yet they entered into an agreement where part of the compensation due to Plaintiffs was based on the marketing and sale of technology.  Additionally, Plaintffs allege that the execution of the Agreement created a confidential relationship between the parties, yet Defendants withheld the fact that they were marketing and selling the Technology through their healthcare consulting business, Accelero.  This suppression caused Plaintiffs not to exercise a clawback of the Technology.  (*Id*. at  31-36).  Third, Plaintiffs argue they are entitled to damages caused by their reliance on alleged promises of Defendant Zimmer, Inc. that Walk would receive royalty

---

[6]Accelero is selling practice management programs titled "Practice Advantage" and "Hospital Advantage." (Complaint at ¶ 26).

payments for technology sales and that Bramlett's consulting services would be used.  (*Id*. at

37-41).  Finally, Plaintiffs assert, in the alternative to the breach of contract claim, that

Defendants Zimmer, Inc. and Zimmer Holdings intentionally interfered with contractual relations

between Plaintiffs and Accelero.  (*Id*. at  42-48).

**DISCUSSION**

**A.**     **Breach of Contract Claims**

    **1.**     **The Zimmer Defendants**

As just noted, Plaintiffs first allege a breach of the Agreement by each of the defendants.

To state a claim for breach of contract, Plaintiffs must show: (1) a valid contract binding the

parties; (2) their performance under the contract; (3) the defendants' nonperformance; and  (4)

resulting damages.  *Sweetwater Investors, LLC v. Sweetwater Apartments Loan LLC*, 810 F.

Supp. 2d 1288, 1294 (M.D. Ala. 2011) (quoting *Barret v. Radjabi-Mougadam*, 39 So. 3d 95, 98

(Ala. 2009)).  Plaintiffs allege there is a valid contract between the parties, namely the

Agreement.  (Complaint at 14; P.A.)  Plaintiffs performed under the Agreement by transferring

all rights, title, and interest in the Technology to HMI (Accelero). (*Id*. at 30; P.A. at 1).  Further,

Plaintiffs allege that Defendants failed to perform by not making the required royalty payments,

not making the required $150,000.00 payment for each of the first four Technology sales to

additional Medical Specialties outside orthopaedics, not providing quarterly sales reports for the

Technology, and by refusing to use Bramlett's consulting services.  (*Id*. at 29).  Finally, Plaintiffs

seek damages as a result of the breach.  (*Id*. at 8).

Defendants initially argue Plaintiffs' allegations fail to state a cause of action against

Zimmer or Zimmer Holdings because neither company is a party to the Agreement. (Doc. 13 at

6

6).  In support of their contention, they note that the preamble and the signature blocks to the

Agreement name only HMI, Walk, and Bramlett.  (*Id*.)  Additionally, they acknowledge Accelero

is a subsidiary of Zimmer and Zimmer Holdings and is the successor of HMI.  However, they

argue those facts do not make the Zimmer defendants liable for Accelero's contracts.  (*Id*. at 7).

In the absence of factual allegations in the complaint to justify piercing Accelero's corporate veil,

they conclude the contract claims against the Zimmer defendants fail as a matter of law.  (*Id*.)

Plaintiffs retort that their complaint "clearly states that 'Zimmer encouraged and

influenced Accelero to violate the terms of the agreement.' "  (Doc. 16 at 5).  They also note that

the Zimmer defendants offer contradictory positions in their motion in that they claim not to be

parties to the contract, yet they argue in an effort to avoid tort liability that they are not

"strangers" to the contract.  (*Id*.)

"It is a general principle of corporate law deeply 'ingrained in our economic and legal

systems' that a parent corporation (so-called because of control through ownership of another

corporation's stock) is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*,

524 U.S. 51, 61 (1998) (quoting Douglas & Shanks, Insulation from Liability Through

Subsidiary Corporations, 39 Yale L.J. 193 (1929)).  "But there is an equally fundamental

principle of corporate law, applicable to the parent-subsidiary relationship as well as generally,

that the corporate veil may be pierced and the shareholder held liable for the corporation's

conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain

wrongful purposes, most notably fraud, on the shareholder's behalf."  *Bestfoods*, 524 U.S. at 62.

The Alabama Supreme Court similarly has noted the general rule that "[a] parent corporation

generally cannot be held liable for the acts of its subsidiary unless the latter's corporate veil can

be pierced as a result of the parent's abuse of control." *Ford v. Carylon Corp., Inc.*, 937 So. 2d 491, 498 (Ala. 2006).  "Under Alabama law, a 'separate corporate existence will not be recognized when a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another....' " *Canal Indem. Co. v. Regency Club Owners Ass'n*, 924 F. Supp. 2d 1304, 1311 (M.D. Ala. 2013) (quoting *Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298, 302 (Ala. 1947)).

The Alabama Supreme Court long ago articulated the general factors to be considered when determining whether to disregard the corporate form: "(1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; or (3) operation of the corporation as an instrumentality or alter ego." *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991).  The Court also articulated the standard to be applied when a plaintiff seeks to disregard the corporate entity under the theory that the subsidiary is "a mere adjunct, instrumentality, or alter ego of the parent corporation." *In re Birmingham Asbestos Litigation*, 997 F.2d 827, 829 (11th Cir. 1993).  It stated that to impose liability on the "dominant party" the essential elements are as follows:

> 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;
>
> "2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed; [and]
>
> "3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*First Health*, 585 So. 2d at 1334-35 (quoting *Messick v. Moring*, 514 So. 2d 892, 894-95 (Ala. 1987) (in turn quoting *Lowndahl v. Baltimore & O. Ry.*, 247 A.D. 144, 287 N.Y.S. 62 (1936)); *see also Kwick Set Components, Inc. v. Davidson Industries, Inc.*, 411 So. 2d 134, 136 (Ala. 1982) (when considering whether to pierce the corporate veil, the court is to look at two necessary elements: "[f]irst, the dominant corporation must have controlled the subservient corporation, and second, the dominant corporation must have proximately caused plaintiff harm through misuse of the control")).

At the outset, the court is not troubled by the arguably inconsistent claims for relief offered by Plaintiffs. FEDERAL RULE OF CIVIL PROCEDURE 8(d) expressly permits the pleading of both alternative and inconsistent claims.[7] *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273-74 (11th Cir. 2009); *see also Diamond Cnter, Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1016 (W.D. Wis. 2008) ("Under the doctrine of pleading in the alternative, 'a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative Plaintiff's complaint is not deficient simply because it alleges breach of contract, equitable estoppel, and tortious

---

[7]Rule 8, in relevant part, provides:

(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

...

(2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

FED. R. CIV. P. 8(d).

interference with contract claims.' " (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)).  However, a party may not recover separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other.  *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1541 (11th Cir. 1986).  Similarly, a defendant may plead alternative and inconsistent defenses.  *See* FEDERAL RULE OF CIVIL PROCEDURE 8(d).

Plaintiffs do not dispute the law, but instead assert, "Discovery of the facts will provide the basis upon which the Plaintiffs will ultimately proceed against" the Zimmer defendants. (Doc. 16 at 5-6).  They further state, "In other words, the facts will demonstrate whether the proper cause of action against [the Zimmer defendants] is one for breach of contract or for promissory estoppel and/or intentionally interfering with the Purchase Agreement."  (*Id*. at 6). The problem with Plaintiffs' position is that to allow the contract claim to proceed against the Zimmer defendants, there must be allegations in the complaint sufficient for this court to find some basis to support a reasonable inference that the Zimmer defendants are liable for the purported conduct of Accelero.  *See Ex parte Unitrin, Inc.*, 920 So. 2d 557, 562-63 (Ala. 2005) (denying the plaintiff discovery before deciding a motion to dismiss on personal jurisdiction grounds where there the allegations were insufficient).  Such allegations are absent in the complaint.  It alleges that Bramlett used Zimmer products in his practice since the mid-1990's. He discussed the marketing of the Technology with Zimmer since 1998.  They discussed how, through a collaborative approach, they would market the Technology world-wide.  (Complaint at ¶ 13).  Finally, Plaintiffs allege that Zimmer has used its websites and marketing materials to promote and sell the Technology by re-branding and renaming it.  (*Id*. at ¶ 26).  This simply is not enough considering the legal requirements for piercing the corporate veil on the contract

claim in this case.

To the extent that Plaintiffs assert under the Intentional Interference with Contractual Relations claim that despite knowing about the Agreement, the Zimmer defendants "encouraged and influenced Accelero to violate the terms of the agreement...," the court finds this conclusory statement, which is not incorporated into the breach of contract claim, similarly is insufficient. Accordingly, the motion is due to be granted as to these defendants on the contract claim (Count One).

### 2.      Condition Precedent

Defendants next argue Plaintiffs have improperly brought a breach of contract suit against Accelero because a condition precedent in the Agreement bars the suit. (Doc. 13 at 7). The court need not go into the common law requirements for conditions precedent because there is no such condition in the instant case. Defendants premise their argument on Article X of the Agreement, which reads in part: "Once per year and upon reasonable advance notice, Walk *shall have the right* to have an independent third party accounting firm reasonably acceptable to HMI audit, for a period not to exceed five (5) days and at Walk's expense, HMI's compliance with Articles IV [Payments] and V [Terms of Payments]." (P.A. at Art. X (italics added)).

When interpreting a contract, the words of the contract should be given their plain meaning. *See Ex parte Dan Tucker Auto Sales, Inc*., 718 So. 2d 33, 36 (Ala. 1998). The Agreement states that Walk has the right to request an audit. However, there is nothing in the language of Article X creating an obligation to do so prior to filing suit. Thus, Plaintiffs are not contractually obligated to seek an audit before filing suit.

11

### 3.     Bramlett's Services

Defendants also dispute that the Agreement guarantees use of Bramlett's consulting services.  (P.A. at Article XI).  The Agreement states that Bramlett will "provide *assistance reasonably requested by HMI* in documenting, refining, and developing the Technology such that it can be successfully commercialized by HMI.  (*Id.* at Art. XI (italics added)).  Using the same plain language analysis as above, Defendants are correct that the contract does not explicitly guarantee use of Bramlett's consulting services.  Rather, Walk has guaranteed to provide the services when they are reasonably requested by Defendants.  This language is analogous to an option contract, where Defendants have the right, but not the obligation, to use Plaintiff's consulting services.  Not invoking this provision does not subject Defendants to liability for services not provided.

Because Defendants have no contractual obligation to use Bramlett's consulting services, there can be no breach of contract on that basis.  As such, the breach of contract claim based upon a failure to use Bramlett for consulting services is due to be dismissed.

In sum, the defendants' motion to dismiss as to the breach of contract claim is due to be granted in part and denied in part.  More particularly, Plaintiffs' breach of contract claim survives as to Accelero premised on the failure to (1) pay royalties, (2) provide quarterly sales reports, and (3) pay $150,000.00 for each of the first four sales of the technology to medical specialties other than orthopaedics.  The breach of contract claim to the extent it seeks to impose liability on the Zimmer defendants and for not using Bramlett's consulting services are due to be dismissed.

### B.     Fraudulent Suppression Claim

Plaintiffs allege Defendants fraudulently suppressed material facts before and after they

entered into the Agreement.  (Complaint at ¶¶ 31-36).  Alternatively, Plaintiffs claim that prior to entering into the Agreement, Defendants knew they were not going to market and sell Plaintiffs' technology, yet they nevertheless entered into an agreement where part of the compensation due to Plaintiffs was based on the marketing and sale of the Technology.  (*Id*. ¶ 32).  Additionally, Plaintiffs allege that the execution of the Agreement created a confidential relationship between the parties, yet Defendants withheld the fact that they were marketing and selling the Technology through their healthcare consulting business, Accelero.  This suppression purportedly deprived Plaintiffs of royalty payments they were due and caused Plaintiffs not to exercise a clawback of the Technology.  (*Id*. at 34-36).  The court will address each claim separately.

### 1.      The Law

In order to state a claim for fraudulent suppression, Plaintiffs must show " '(1) a duty on the part of [a] defendant to disclose facts; (2) concealment or nondisclosure of material facts by [a] defendant; (3) inducement of [a] plaintiff to act; [and] (4) action by [a] plaintiff to his or her injury.' "  *Freightliner, LLC v. Whatley Contract Carriers, LLC*, 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 63 (Ala. 1996)).  When determining a party's duty to disclose, the court must consider "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."  *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 842-843 (Ala. 1998).

### 2.      Discussion

#### a.      Pre-execution Claim

As for the former claim, actions occurring before execution of the agreement, Defendants

allege that Plaintiffs' fraudulent suppression claim fails because there was no obligation to disclose facts before the execution of the agreement.[8]  (Doc. 13 at 12).  Plaintiffs respond that there was a confidential relationship between the parties and that "[f]ormal discovery will further reveal that prior dealings between Dr. Bramlett and the Zimmer defendants support the Plaintiffs' contention that a confidential relationship existed."  (Doc. 16 at 7).

Contrary to Plaintiffs' retort, the complaint does not allege any type of relationship imposing a duty on Defendants to disclose information preceding the signing of the Agreement. (See Complaint ¶ 34).  Alabama law is clear that when parties to a business transaction deal at arm's length, there is no duty to disclose unless the information has been requested.  *See Mason v. Chrysler Corp.*, 653 So. 2d 951, 955 (Ala. 1995); ALA. CODE § 6-5-102 ("Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.").  Furthermore, unless a duty to disclose exists, remaining silent to a fact does not constitute fraud.  *Mason*, 653 So. 2d at 954-55.  Plaintiffs do not claim in their complaint to have requested any information until after the Agreement had been finalized. (Complaint at ¶ 33).  As Plaintiffs provide no facts showing a duty to disclose before the finalization of the Agreement, including a relationship requiring disclosure of the allegedly suppressed facts, Plaintiffs' claim of fraudulent suppression prior to the finalization of the Agreement is due to be dismissed.

---

[8]Plaintiffs label this claim as one for fraudulent suppression, however it appears it would be more accurately described as a claim for promissory fraud.  Nevertheless, because Plaintiffs have couched the claim as one for fraudulent suppression, the court will analyze it as such.  *See Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1210 (Ala. 2008) (stating that a claim for promissory fraud is "one based upon the promise to act or not to act in the future").

### b.     Post-execution Claim

Plaintiffs also allege that fraudulent suppression occurred after the execution of the Agreement.  (*Id*. at ¶¶ 31-36).  Plaintiffs assert they made repeated requests for sales information, royalty payments, and consultations, but Defendants allegedly gave false information concerning these requests.  (*Id*. at ¶ 33).  Specifically, Plaintiffs state that when they asked for those items they were told by Defendants "that they were preoccupied by other pressing matters, often citing regulatory concerns and the company's participation in a Deferred Prosecution Agreement with the federal government."  (*Id*.)  In fact, they allege, Defendants were hiding that they were marketing and selling the Technology through Accelero.  (*Id*. at ¶ 34).  Furthermore, Plaintiffs' claim that Defendants suppression of this information resulted in the nonpayment of royalties and kept Plaintiffs' from utilizing the "clawback clause" of the Agreement.  (*Id*. at ¶¶ 34-35).  As noted above, a request for information material to the contract creates a duty to disclose the information requested.  *Mason*, 653 So. 2d at 954.  Plaintiffs assert facts that, if true, meet the other three elements of fraudulent suppression in that the facts purportedly were suppressed by Defendants, resulting in Plaintiffs' not exercising the clawback provision and suffering financial injury.

At this juncture, the court must accept that Defendants did not disclose the requested material information and that Plaintiffs acted in reliance on the representations of Defendants to their detriment.  Defendants' reliance on Article X, dealing with the audit provision (doc. 13 at 12; doc. 19 at 6), is not a defense to this claim premised on the court's previous discussion of this issue.  *See supra* at A.2.

Plaintiffs have presented sufficient factual and legal allegations to support a fraudulent

suppression claim for the conduct occurring after execution of the Agreement concerning Accelero. Accordingly, the motion to dismiss Count Two should be denied with regard to allegations that Accelero fraudulently suppressed information after the Agreement was finalized. There are, however, insufficient allegations in the complaint concerning a duty on the part of the Zimmer defendants to disclose such information since they are not parties to the contract under the present allegations. Therefore, the motion to dismiss is due to be granted as to them on this portion of the fraudulent suppression claim.

## C.    Promissory Estoppel

Plaintiffs next seek to recover from only the Zimmer defendants under a promissory estoppel theory. (See Doc. 16 at 9). More particularly, Plaintiffs allege the Zimmer defendants promised to pay royalties for sales of the Technology and for use of Bramlett's consulting services.[9] (Complaint at ¶¶ 38-40). Plaintiffs claim their reliance on these unfulfilled promises induced them to enter into the Agreement to their detriment, and that they have lost the opportunity to promote and sell the Technology. (*Id*. at ¶ 40).

Alabama law defines promissory estoppel as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action and forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Wyatt v. BellSouth, Inc.*, 176 F.R.D. 627, 631 (M.D. Ala. 1998). The Alabama courts have specified four elements for a plaintiff to prevail on a claim of promissory estoppel: "(1) that the defendant made a promise (2) that the defendant should have reasonably expected to induce

---

[9]This claim is only being advanced against the Zimmer defendants. (See Complaint at ¶¶ 37-41),

action or forbearance of definite and substantial character; (3) the promise did, in fact, induce action or forbearance; (4) and injustice can be avoided only by enforcing the promise." *Sykes v. Patton*, 441 F. Supp. 2d 1220, 1224 (M.D. Ala. 2006).  The court need only look to promissory estoppel when it has "determined that no binding contract existed."  *Aldridge v. DaimlerChrysler Corp.*, 809 So. 2d 785, 794 (Ala. 2001).  "[W]here an express contract on the same subject matter exists and has not been breached, promissory estoppel cannot function to create liability." *Cook v. United Health Care*, 2010 WL 3629766, *6 (M.D. Ala. 2010).  The Alabama Supreme Court has also noted, "although equitable estoppel might transform an otherwise non-binding agreement into a legally binding contract, this court has held that the principle of promissory or equitable estoppel cannot be utilized to create primary contractual liability where none would exist."  *Bates v. Jim Walter Resources, Inc.*, 418 So. 2d 903, 905 (Ala. 1982).  "In addition, in order for a promise to create an estoppel, the promise must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Wyatt* , 176 F.R.D. at 631; *see also Cook*, 2010 WL 3629766 at *6 (stating that Plaintiff's failure to adduce any specific evidence of representations made by Defendants, relied upon by him, and subsequently not kept by Defendants would doom these claims).

Defendants argue entitlement to dismissal of this claim because the Zimmer defendants are not parties to the Agreement and Plaintiffs have failed to satisfy the conditions necessary to assert a claim against Accelero.[10]  (Doc. 13 at 13).  Additionally, Defendants note that Plaintiffs cannot "create primary contractual liability where none would otherwise exist."  (*Id*. at 13-14 (citing *Bates*, 418 So. 2d at 905)).  In their reply, Defendants also argue that because there is an

---

[10]The latter claim has been addressed previously.

express contract on the subject matter that has not been breached, this claim cannot create liability.  (Doc. 19 at 6 (citing *Cook v. United Health Care*, 2010 WL 3629766, *6 (M.D. Ala. 2010)).  As a part of this latter claim, Defendants also argue that any representations the Zimmer defendants made are irrelevant "because Plaintiffs set forth all aspects of their contract in the Purchase Agreement they executed with HMI."  (Doc. 19 at 7).

The Agreement is a fully integrated contract between Plaintiffs and HMI.  Article XIX thereto provides, "[t]his Agreement contains the entire understandings of the parties with respect to the matters contained herein."  (Complaint, P.A. at Article XIX).  A merger clause " 'establish[es] that a written agreement is a completely integrated document, into which all prior and contemporaneous negotiations are merged.' "  *Harbor Vill. Home Ctr., Inc. v. Thomas*, 882 So. 2d 811, 816 (Ala. 2003) (quoting *Crimson Indus., Inc. v. Kirkland*, 736 So. 2d 597, 601 (Ala. 1999) (emphasis in original)).  Therefore, promises made by any contracting party (e.g. HMI) prior to the Agreement, that were not included in the Agreement, cannot be subject to a claim of promissory estoppel.  However, as just noted, Defendants also argue that because the Zimmer defendants are not parties to the Agreement, a promissory estoppel claim is barred due to the existence of the Agreement on the subject matter and a failure to satisfy the preconditions for filing suit.  (Doc. 13 at 13; Doc. 19 at 7).

As non-parties to the Agreement, the Zimmer defendants may be subject to promissory estoppel claims for promises they may have made concerning the Agreement to induce Plaintiff to action only if there is a determination that the Agreement is unenforceable.  If the Agreement is found to be unenforceable, then, and only then, could this claim possibly be viable as to the

18

Zimmer defendants.[11]  If there is no breach of the Agreement, this claim necessarily fails.

However, even at this juncture, the count cannot "create primary contractual liability where none

would otherwise exist."  *See Bates*, 418 So. 2d at 905.  Even reading the complaint liberally, the

court finds there are insufficient allegations under *Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S.

at 677 to support a claim against the Zimmer defendants.  Plaintiffs must plead factual

allegations "that allow[ ] the court to draw the reasonable inference that [a] defendant is liable for

the alleged misconduct."  *Speaker*, 623 F.3d at 1380 (quoting *Iqbal*, 556 U.S. at 677).  They have

failed to do this.  Plaintiffs, in non-specific terms, state the Zimmer defendants promised to use

Bramlett's consulting services and to pay royalty payments.  (Complaint ¶ 38).  That is not

enough.  *See Bates*, 418 So. 2d  at 905 (affirming a grant of summary judgment on an equitable

estoppel claim were the term, period, or duration were not specified in the alleged employment

contract).  This is particularly true in this case where such information is within the purview of

Plaintiffs or their agents.  This is not the type of information held exclusively in the province of a

defendant.  For example, Plaintiffs have not specified what terms the Zimmer defendants agreed,

including for Bramlett's services or as royalties, before the terms with HMI were settled.

Accordingly, Defendants' motion to dismiss the promissory estoppel claim (Count Three) is due

be granted.

### D.     Interference With Contractual Relations

Plaintiffs allege in their final count (Count Four) that the Zimmer defendants intentionally

interfered with the contractual relations between them and Accelero.  (Complaint ¶¶  42-48).

_____

[11]The court has purposely chosen the word "could" because neither the court nor the parties has found any
controlling authority holding whether or not a promissory estoppel claim may be advanced against a non-party to a
contract in a fact situation similar to the present one.

Plaintiffs argue that if the Zimmer defendants are found not to be parties to the Agreement, they still may be strangers with knowledge of the Agreement that unduly influenced a party, Accelero, to violate the terms of Agreement.  (*Id*. ¶¶ 43-48).

In order to establish a claim of intentional interference with contractual relations, Plaintiffs must show " '(1) the existence of a contract or business relation, (2) [a] defendant's knowledge of the contract or business relation, (3) intentional interference with the contract or business relation, and (4) damage to [a] plaintiff as a result of the interference.' "  *MACE., LLC v. Shoney's,* 535 F.3d 1293, 1297 (11th Cir. 2008) (quoting *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc*., 990 F.2d 598, 603 (11th Cir. 1993)).  Furthermore, the Zimmer defendants must be strangers to both the contract *and* the business relationship giving rise to the contract in order for liability to exist.  *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454-55 (Ala. 2004).

The Zimmer defendants argue that, although they are not parties to the Agreement, they are not strangers either because, as Accelero's parent corporation and a holding corporation, they have an economic interest in the contractual relationship.  (Doc. 13 at 15).  They also note that their involvement and interest in the Agreement is demonstrated by Plaintiffs' allegations in the Complaint, including that Plaintiffs allege (1) the Zimmer defendants made representations that induced them to enter into the agreement with HMI (Accelero) (Complaint ¶¶ 12-14), (2) the Agreement, which is a part of the Complaint, provides that counsel for Zimmer is to be provide with any notice or report required or permitted by the Agreement (Exh. A, Article XVIII), and (3) Zimmer is enumerated as the owner and operator of Accelero (Complaint ¶ 5).  Because of these allegations and relationship, they argue the interference claim is due to be dismissed.

"A party who is not a party to a contract is not necessarily a 'stranger' to the contract." *Parsons & Whittemore Enterprises Corp. v. Cello Energy*, 613 F. Supp. 2d 1271, 1281 (S.D. Ala. 2009); *Tom's*, 896 So. 2d 455.  A defendant is not a stranger to a relationship if he "has any beneficial or economic interest in, or control over, that relationship."  *Id.* (citing *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003)); *Tom's Foods*, 896 So. 2d at 454.  Accordingly, the question at this point is whether accepting Plaintiffs' allegations, the Zimmer defendants should be dismissed as to this claim under *Twombly* and *Iqbal*.  *See Fitzgibbons, LLC v. REV Birmingham, Inc.*, 2014 WL 1923813, *11 (N.D. Ala. May 12, 2014). The court finds that to be the case.

Defendant Accelero is a subsidiary of the Zimmer defendants, and thus they have an economic interest in the Agreement.  The Zimmer defendants are not strangers to the Agreement because of the allegations that they induced Plaintiffs to enter into the Agreement, notices and reports are to be served on their legal counsel, and they necessarily have a beneficial or economic interest in the arrangement.

Finally, it is Plaintiffs' burden to show that each defendant is a stranger to the contract based on the facts alleged.  *Waddell & Reed*, 875 So. 2d at 1154.  Accordingly, they are required to provide some allegation that the Zimmer defendants meet that status.  In this instance, however, Plaintiffs accomplish quite the opposite.  By alleging the subsidiary relationship and the Zimmer defendants' influence in the early discussions, as well as the notice provision in the Agreement, Plaintiffs demonstrate at this point that the Zimmer defendants are not strangers to the Agreement.  The motion to dismiss is due to be granted as to the Zimmer defendants on the interference claim in Count Four.

## CONCLUSION

Premised on the foregoing, the defendants' motion to dismiss (doc. 12) is due to be granted in part and denied in part as follows.  First, the breach of contract claim in Count One is due to be dismissed as to the Zimmer defendants in full and as to Accelero to the extent it asserts a claim regarding not using Bramlett's consulting services.  Second, the fraudulent suppression claim in Count Two is due to be dismissed as to all the defendants to the extent it is premised on conduct occurring before the agreement was executed, and due to be dismissed only as to the Zimmer defendants for conduct occurring after the execution of the agreement.  Third, the promissory estoppel claim in Count Three is due be dismissed in full.  Fourth, the intentional interference claim in Count Four is due to be dismissed in full.

**DONE**, this the 30th day of May, 2014.

*John E. Ott*

**JOHN E. OTT**
Chief United States Magistrate Judge